## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MICHAEL WHITE, on behalf of himself and all others similarly situated, | **:** |
| | **:**   **Case No. 23-383** |
| | **:** |
| Plaintiff, | **:**   **Judge Silfen** |
| | **:** |
| v. | **:** |
| | **:**   **CLASS ACTION** |
| THE UNITED STATES OF AMERICA, | **:**   **AMENDED COMPLAINT** |
| | **:** |
| Defendant. | **:** |
| | **:** |

Plaintiff Michael White, individually and on behalf of a class of 9/11 first responders, alleges, upon personal knowledge as to himself and his own acts and upon information and belief as to all other matters, based upon the investigation of counsel, as follows:

### I.   INTRODUCTION

1.       With this action, Plaintiff Michael White seeks redress on behalf of himself and several thousand 9/11 first responders and rescue workers for the inexplicable and improper conduct of the United States government (the "Government") in connection with the 9/11 Victim Compensation Fund.

2.       In the wake of the September 11, 2001 attacks, the Government created a "Victim Compensation Fund" (VCF). The VCF served two purposes: 1) to efficiently distribute funds to 9/11 victims, and 2) to prevent victims' legal claims from inundating U.S. courts and generating enormous liabilities for airlines and other potential defendants. The Government re-opened the VCF in 2011, upon recognition that many first responders, like the Plaintiff, were suffering significant adverse health effects from their service following 9/11.

3.       To achieve its goals, the Government established a contract-based system with prospective VCF applicants. In order to pursue VCF funds, applicants had to waive any right to

bring a civil action to recover damages suffered as a result of the 9/11 attacks. In exchange, as confirmed in the Government's 2001 and 2011 regulations, the Government agreed to process first responders' claims "**in accordance with the provisions of this [Regulation] that were in effect at the time that their claims were submitted**." That is, the Government agreed to issue VCF awards in accordance with the regulations in effect when the applicant waived their rights.

4.      This arrangement ensured that claimants could make an informed decision whether to waive their rights as part of an agreement with the Government.

5.      However, in Plaintiff's case – and that of many other first responders – the Government blatantly violated the terms of its agreement through a bait-and-switch.

6.      Plaintiff, a former firefighter and Navy submariner, drove from Philadelphia to Lower Manhattan to perform rescue and recovery work at Ground Zero. He has since suffered from numerous debilitating, but non-cancerous, medical conditions.

7.      In 2013, Plaintiff waived his right to bring a civil action to recover damages in favor of the Government's offer to participate in the VCF program.

8.      Plaintiff's claim sat with the VCF for the next two years.

9.      In 2015, Congress passed a law (which was implemented through 2016 amendments to the VCF regulations) that extended the duration of the VCF, created limits for compensation available to VCF claimants, and deprioritized loss claims of certain claimants.

10.      Notwithstanding these changes, Plaintiff's agreement with the Government provided that Plaintiff was entitled to have his claim processed pursuant to the regulations in place at the time he submitted his claim – i.e., the 2011 regulations.

11.      In breach of this agreement, the Special Master insisted on applying the amended regulations – and not the 2011 regulations – to Plaintiff's claim. By depriving Plaintiff and

thousands of other claimants of the promised claims process, and instead insisting on retroactively limiting the amount that Plaintiff and others in his position would recover, the Government breached its agreement with those parties.

12.     As a result, Plaintiff and a class of several thousand first responders and rescue workers received tens of millions of dollars less in compensation for their 9/11-related losses than they were entitled under their agreement with the Government.

## II.    JURISDICTION AND VENUE

13.     Under the Tucker Act, 28 U.S.C. § 1491, this Court has jurisdiction over this action and venue is proper because this suit asserts a claim for breach of contract against the United States of America.

## III.    PARTIES

14.     Plaintiff Michael White ("Plaintiff") is a former Philadelphia firefighter and U.S. Navy submariner. Following his service at Ground Zero, Plaintiff began suffering severe respiratory issues and other debilitating and uncomfortable conditions, including obstructive chronic bronchitis, chronic rhinitis, nodules on his vocal cords, esophageal reflux, and laryngeal spasm. Plaintiff has been hospitalized on multiple occasions and requires regular respiratory therapy as a result of these conditions.

15.     Defendant is the United States of America, acting through the VCF Special Master and Department of Justice, as well as their employees and agents.

## IV.     FACTUAL BACKGROUND

16.     On or about September 13, 2001, Plaintiff drove from Philadelphia to Lower

Manhattan to work on the pile together with thousands of other selfless first responders hoping to

rescue victims trapped beneath the World Trade Center rubble.

17.     Like many others, Plaintiff continued working at Ground Zero for approximately

six days, around the clock, without proper protective equipment.

18.     In the ensuing years, Plaintiff developed serious breathing issues and other health

complications. Plaintiff has been hospitalized numerous times resulting from the respiratory

damage he sustained at Ground Zero. He struggles to breathe each day. His quality of life has

dramatically worsened as a result of his efforts following the 9/11 terrorist attacks.

19.     Plaintiff is not unique in his heroism, nor in the horrible impact his bravery had on

his body and quality of life.

20.     Plaintiff and thousands of others similarly impacted have elected to contract with

the Government, and its Victim Compensation Fund, in order to pursue compensation for the

damages they suffered in connection with 9/11.

21.     As set forth herein, the Government has breached its agreement with Plaintiff and

many others, depriving them of the full compensation to which they were entitled under the

parties' agreement.

### A.     The 2001 Victim Compensation Fund

22.     The United States Government created the VCF in 2001, immediately after the

9/11 terrorist attacks.

23.     The VCF served two principal objectives: 1) to distribute funds to 9/11 victims efficiently, and 2) to prevent victims' legal claims from inundating U.S. courts and generating enormous liabilities for airlines and other potential defendants.

24.     The VCF was conceived as a contractual offering: If an individual waived their right to bring a civil action concerning damages sustained related to the 9/11 attacks, the Government would – in exchange – evaluate that person's eligibility and, when appropriate, award compensation pursuant to the loss calculation methodology in effect at the time of waiver.

25.     The legislation creating the VCF established a Special Master, operating within the Department of Justice, to lead the VCF. The Special Master is vested with significant discretion to operate the VCF.

26.     The Department of Justice, in turn, promulgated regulations regarding the operation of the VCF.

27.     The VCF divided compensation into two categories: economic and non-economic losses. Economic losses concerned the loss of income and benefits. Non-economic losses concerned pain, suffering, and other impacts on claimants' wellbeing.

28.     The VCF established methodologies and formulas to determine the losses to be awarded to eligible claimants.

29.     From the outset, the Special Master emphasized that potential applicants needed to be aware of the manner in which their awards would be calculated. This would ensure that prospective claimants would make an informed decision whether to waive the right to pursue civil actions for damages.

30.     The Special Master, in a statement submitted with the Department of Justice's 2001 "Interim Final Rule With Request for Comments," explained:

> The first objective is that the process should be efficient, straightforward, and understandable to the claimants. . . . More important, however, is that claimants be able to enter the program—or choose not to enter the program—with an understanding of how their claims will be treated. This is especially important because the Act provides that, **upon submission of a claim, a claimant waives the right to file a civil action for damages sustained as a result of the September 11 attacks. For claimants to make an informed decision regarding this waiver, they should have some understanding of how their award will be calculated and how much they would receive from the Fund should they decide to file a claim**.

[Emphasis added.]

31.     Consistent with that objective, the 2001 Final Rule established that: **"In the event that amendments are subsequently made to any section of this Part, claimants are entitled to have their claims processed in accordance with the provisions that were in effect at the time that their claims were submitted."** 28 CFR § 104.6 (Emphasis added.)

32.     The VCF was initially open for approximately two years, closing in December 2003. Over that period the Government primarily provided payments on claims for persons who suffered immediate death or injury in the 9/11 terrorist attacks. From 2001 to 2003, the Government issued compensation of over $7 billion to over 5,500 claimants.

## B.     Congress Re-opens the VCF in 2011

33.     In subsequent years, it became clear that the physical harm of 9/11 extended to first responders, rescue workers, and others who spent time in the areas of the terrorist attacks.

34.     Recognizing this fact, Congress passed the James Zadroga 9/11 Health and Compensation Act of 2010. The Zadroga Act, among other things, restarted the VCF and expanded eligibility to first responders, rescue workers, and others who had been in the areas of the terrorist attacks in the months that followed 9/11.

6

35.     Under the Zadroga Act, the VCF was to re-open for an additional five years of claims in order to distribute up to $2.775 billion in additional compensation.

36.     Pursuant to the Zadroga Act, the Special Master updated the 2001 VCF regulations to reflect changes implemented through the new legislation. These 2011 regulations (the "2011 Regulations") are attached hereto as Exhibit 1.

37.     The Special Master updated the applicable regulations so that the VCF would be, in her words, "fair, transparent, and easy to navigate."

38.     The VCF remained contract-based. Claimants would have to waive their ability to bring related civil actions in order to be considered for VCF eligibility.

39.     In exchange for claimants foregoing the opportunity to bring civil actions, the Government agreed to process VCF claims pursuant to the regulations in place at the time that waiver became effective.

40.     Specifically, at 28 CFR §104.6 of the 2011 Regulations, titled "Amendments to this part," the Government promised that: "Claimants are entitled to have their claims processed in accordance with the provisions of this Part that were in effect at the time that their claims were submitted. All claims will be processed in accordance with the current provisions of this Part, unless the claimant has notified the Special Master that he or she has elected to have the claim resolved under the regulations that were in effect at the time that the claim was submitted under § 104.22(d)."

41.     The VCF retained a compensation structure comprising economic and non-economic losses. The 2011 Regulations established a presumed non-economic loss for decedents of $250,000 plus an additional $100,000 for the spouse and each dependent of the deceased victim.

42.     For living claimants who had suffered physical harm, presumed non-economic losses would be calculated through adjustment from the presumed non-economic losses for decedents.

43.     The Government calculated non-economic loss awards by grouping medical conditions. Individuals with cancer diagnoses would receive presumptively higher non-economic loss awards than persons without cancer. However, there was no limitation on non-economic losses for non-cancer conditions.

44.     In addition, the Government issued all eligible claimants a minimum non-economic loss award of $10,000.

45.     For economic losses suffered by decedents, the Special Master was to create a methodology and schedules, tables, or charts identifying "presumed determinations of loss of earnings or other benefits related to employment for annual incomes up to but not beyond the 98th percentile of individual income in the United States for the year preceding the year of death." The 98th percentile of income for 2011 was approximately $368,000. This methodology was also used to determine economic losses for living claimants.

46.     To participate in the re-opened VCF, claimants would submit a claim form, together with a set of signed "Attestations and Certifications."

47.     One such attestation was a statement by the claimant that, by submitting their VCF claim, they were waiving their right to file a civil lawsuit to pursue damages related to the 9/11 terrorist attacks; submission of the waiver, alongside the claim form, consummated a contractual relationship between the claimant and the Government.

48.     After a claimant waived their rights to pursue 9/11-related civil claims, the Government would consider that person's VCF eligibility.

8

49.     For those claimants deemed eligible, the Government would then determine the loss incurred by the claimant, pursuant to the loss calculation methodology in effect at the time of the claimant's waiver, and issue a monetary award. *See* 28 CFR § 104.6.

50.     The 2011 Regulations reaffirmed a fundamental aspect of the agreement between claimants and the Government: In exchange for a claimant waiving their civil claims, the individual's VCF claim would be evaluated under the loss calculation criteria **in effect at the time of waiver**. *See* 28 CFR § 104.6. This was intended to ensure that claimants could "make an informed decision" regarding their waiver of rights, and protected claimants against future changes to the regulations that might diminish their award.

### C.     Congress Reauthorizes the VCF and the Government Amends the VCF Regulations

51.     The re-opened VCF commenced operation in 2011. Between that time and December 18, 2015, over 20,000 people sought compensation through the VCF.

52.     However, the pace of VCF award issuance was extremely slow. Despite a regulatory requirement that compensation awards be issued within 75 days of claim filing, only 3,128 VCF compensation determinations had been made as of January 2, 2015.

53.     In addition, by 2015 it became clear that first responders and rescue workers were continuing to fall ill from the effects of their exposure to the terrorist attack areas, and that the funding authorized in the Zadroga Act would be inadequate.

54.     On December 18, 2015, President Barack Obama signed into law the James Zadroga 9/11 Victim Compensation Fund Reauthorization Act. This law extended the time period for VCF claim submissions and made available additional funds for compensation.

9

55.     Following passage of the Zadroga Reauthorization Act, the Special Master made significant amendments to the VCF regulations. These amended regulations (the "Amended Regulations") are attached as Exhibit 2.

56.     The Amended Regulations modified the VCF claims and compensation process. The Amended Regulations established two different groups for VCF compensation purposes. "Group A" comprised VCF claimants to whom "the Special Master postmarks and transmits a final award determination" on or before December 18, 2015.

57.     "Group B" comprised those VCF claimants excluded from Group A, including thousands of claimants who, prior to December 18, 2015, had waived their rights to bring any related civil action to as part of their agreement with the Government.

58.     Under the Amended Regulations, compensation calculations for Group A were unchanged. The Government applied the 2011 Regulations protocol: Non-economic and economic loss calculations for living claimants were not subject to a cap, nor were awards prioritized for parties based on their condition.

59.     Persons placed into Group B, however, faced a different loss calculation methodology under the Amended Regulations. This approach would reduce the compensation awarded to living VCF participants without a cancer diagnosis.

60.     Under the Amended Regulations, Group B was subject to a $90,000 cap on non-economic damages for living parties without a cancer diagnosis.

61.     In addition, for Group B claimants, the Special Master prioritized "claims for claimants . . . suffering from the most debilitating physical conditions" – thereby *reducing* the compensation available to Group B claimants *not* suffering from the "most debilitating" conditions.

62.     Economic loss calculations for Group B under the Amended Regulations were based on a maximum of $200,000 in gross income.

63.     Claimants in Group B also would not receive a minimum award of $10,000.

64.     The changes to the Group B loss calculation methodology implemented in the Amended Regulations would have a significant negative impact on the awards issued to claimants with non-cancer conditions.

65.     According to VCF reports, first responders whose non-cancer claims were calculated under the Amended Regulations methodology (i.e., Group B) received an average award of **$22,000 less** than those whose non-cancer claims were calculated under the 2011 Regulations.

**D.      The Government Breaches Its Agreement With Plaintiff**

66.     Plaintiff filed a claim with the VCF in October 2013. In doing so, Plaintiff sought compensation for the severe respiratory and gastrointestinal conditions that began following his work at Ground Zero.

67.     Plaintiff filed an Eligibility and Compensation Form with the VCF. Together with that document, Plaintiff submitted an Acknowledgement of Waiver of Rights, a copy of which is attached as Exhibit 3.

68.     In the Acknowledgement of Waiver of Rights, Plaintiff affirmed that:

> I hereby acknowledge that **by submission of a substantially complete Eligibility Form, I am waiving the right to file a lawsuit (or be a party to a lawsuit) in any federal or state court for damages sustained** as a result of the terrorist-related aircraft crashes of September 11, 2001 or for damages arising from or related to debris removal.

> [Emphasis added.]

69.     There was nothing contingent or ambiguous about Plaintiff's waiver. This waiver was the consideration furnished by Plaintiff in contracting with the Government for purposes of

claiming compensation through the VCF pursuant to the provisions governing the claims process at that time.

70.     At the time that Plaintiff submitted his claim documents and waived his rights, the VCF placed no upper limit on non-economic damages for claimants not suffering from cancer. *See generally* 2011 Regulations. In addition, the VCF was not deprioritizing claims from claimants with less debilitating physical conditions. *Id.*

71.     The Government reaffirmed the parties' contractual relationship in its letter of September 11, 2014. The Government wrote: "The Claims Evaluator determined that your Eligibility Form was substantially complete on September 11, 2014. As stated in the Regulations and on the Eligibility Form, by filing a substantially complete Eligibility Form, you have waived your right to file or be a party to a September 11th-related lawsuit." *See* Exhibit 4.

72.     On January 11, 2017, Plaintiff received a loss calculation letter awarding non-economic damages of $90,000 (Exhibit 5). The letter stated that Plaintiff's claim was calculated pursuant to the Amended Regulations.

73.     Plaintiff appealed this determination to the Special Master. On appeal, Plaintiff requested that the Special Master provide additional non-economic loss compensation to which Plaintiff was entitled pursuant to the claims process provisions in place at the time he submitted his claim – i.e., the 2011 Regulations.

74.     On April 4, 2017, Plaintiff had a VCF appeal hearing. Relying on the language in the 2011 Regulations, Plaintiff requested an increased non-economic loss award in excess of that permitted under the Amended Regulations. The Special Master was thus notified that Plaintiff was electing his contractual right to proceed under the 2011 Regulations.

75.     On July 5, 2017, the Special Master issued Plaintiff a determination on his appeal denying any additional compensation. *See* Exhibit 6.

76.     The Special Master, in her July 5, 2017 denial of Plaintiff's appeal, wrote: "Your claim was calculated using our published regulations [i.e. the Amended Regulations], and I believe it is fair and reasonable under the requirements of the Reauthorized Zadroga Act."

77.     The Special Master thus refused to apply the 2011 Regulations to Plaintiff's claim, in direct contravention of the terms of Plaintiff's agreement with the Government. This constituted a breach of the parties' agreement.

78.     Having entered into an agreement with the Government and waived his rights prior to December 18, 2015, Plaintiff was entitled to have his loss calculation performed pursuant to the process and standards set out in the 2011 Regulations.

## V.     CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims, individually and on behalf of all others similarly situated, for a Class defined as:

> **All 9/11 Victim Compensation Fund claimants who, in pursuing VCF compensation: waived their right to bring civil actions concerning damages related to the 9/11 attacks prior to December 18, 2015 and had compensation calculated pursuant the "Group B" standards set forth in the 2016 Amended VCF Regulations, and who: 1) had claims for non-cancer conditions, or 2) had gross income at the time of their VCF claim that exceeded $200,000.**

80.     Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

81.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Rules of the United States Court of Federal Claims.

82.     **Numerosity – Rule 23(a)(1)**. The members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable. According to VCF data, over 22,000 eligibility forms had been submitted as of December 31, 2015, while only 9,131 compensation decisions had been rendered by that date. Further, the VCF regularly reports that claimants hail from states around the country.

83.     While Plaintiff believes that there are thousands of Class members, the precise Class size may be ascertained from the Government's records.

84.     Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

85.     **Commonality and Predominance – Rule 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

a. Whether the Government contracted with Plaintiff and the Class;

b. The terms of the parties' contract;

c. Whether the Government breached that contract by failing to process their claims pursuant to the applicable provisions of the 2011 Regulations; and

d. Whether Plaintiff and other Class members sustained damages as a result of the Government's conduct.

86.     **Typicality – Rule 23(a)(3)**. Plaintiff's claims are typical of the other Class members' claims. Plaintiff and each of the other Class members entered into identical agreements with the Government to be evaluated for VCF eligibility and, if appropriate, to receive a compensation award pursuant to the agreed upon loss calculation methodology.

Plaintiff's and Class members' waivers contained the same language. The same regulations applied to all Class members. And the Special Master applied the same loss calculation methodologies across all Class members. Plaintiff and each of the other Class members were subject to the Government's breach of contract whereby the Government refused to process their claims pursuant to the applicable provisions of the 2011 Regulations.

87.    **Adequacy of Representation – Rule 23(a)(4)**. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who is competent and experienced in class action litigation. Plaintiff intends to prosecute this action vigorously, and Plaintiff has no interests that conflict with or are otherwise antagonistic to other Class members' interests. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

88.    **Generally Applicable Action – Rule 23(b)(2)**. The Government acted on grounds generally applicable to the Class by utilizing the same documents with all Class members, taking actions that were applicable across all Class members, and acting pursuant to statutes and regulations that applied equally to all Class members.

89.    **Superiority – Rule 23(b)(3)**. A class action is superior to all other available methods of adjudicating this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Government, so it would be impracticable for Class members to individually seek redress. Even if the Class members could afford to pursue individual litigation, this Court would be overburdened by so many cases. Further, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class

action device presents far fewer management difficulties, and provides the benefits of uniform

supervision and adjudication by a single judge in a single court.

## VI.     CLAIMS FOR RELIEF

### COUNT I - Breach of Contract

90.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1–89 as

if fully set forth herein.

91.     Plaintiff brings this Count individually and on behalf of the other Class members.

92.     Plaintiff and each of the other Class members entered into valid, enforceable

contracts with the Government following the re-opening of the VCF in 2011.

93.     All parties mutually intended to be bound in contract.

94.     From the outset, the VCF was conceived as a contractual program. The Special

Master spoke of the need for certainty on the part of claimants: that they should understand what

they would receive in exchange for their waiver of claims.

95.     The Government created claim submission documents that included a waiver

form pursuant to which claimants waived their rights in order to be considered for VCF

compensation.

96.     Claimants were required to affirmatively waive their claims in order to be

considered for compensation under the VCF.

97.     The Government agreed that, in exchange for claimants' waivers, "Claimants are

entitled to have their claims processed in accordance with the provisions of [the VCF

Regulations] that were in effect at the time that their claims were submitted." 28 CFR § 104.6.

98.     There was no ambiguity in the Government's offer, nor in the acceptance of that

offer by Plaintiff and other members of the Class.

16

99.     The Government offered potential claimants the opportunity to participate in the VCF in exchange for their waiver of civil claims related to 9/11.

100.    The Government made this offer by authorizing the VCF by statute; promulgating regulations governing claimant eligibility and compensation; establishing methodologies and publishing information concerning the manner in which claimant losses would be calculated; creating claim forms that enabled claimants to pursue recovery for losses; and requiring that claimants provide a signed statement waiving their rights to bring 9/11-related civil claims as a prerequisite to being considered for compensation by the VCF.

101.    There was no ambiguity in the Government's offer: If a person waived their right to bring 9/11-related civil claims, the Government would, in return, evaluate the claimant for participation in the VCF and, where appropriate, compensate that claimant for losses pursuant to the loss calculation methodology in place at the time the claimant waived their rights.

102.    Plaintiff and the other Class members accepted this offer by providing the Government with a signed document waiving all civil claims for 9/11-related damages together with their VCF claim documents.

103.    Plaintiff's acceptance of the Government's offer, and the acceptance of the other Class members, was unambiguous. As explained by the Special Master, any ambiguity in this process would have been grossly unfair to claimants given that they were required to accept the Government's offer, and waive their rights, before the VCF claim evaluation even began.

104.    Plaintiff and the Class, on the one hand, and the Government, on the other, provided consideration to facilitate the parties' contractual engagement.

105.    Plaintiff and the Class provided consideration in the form of their waiver of any 9/11-related civil claims.

106.     The Government provided consideration with its promise to evaluate claimants'

VCF claims for eligibility and, where appropriate, provide compensation pursuant to the loss

calculation methodologies prevailing at the time of the claimant's waiver of claims.

107.     The Special Master, on behalf of the VCF, had authority to bind the Government

in contract pursuant to the Zadroga Act.

108.     Plaintiff and the other Class members performed their obligations under the

contract by waiving their rights to pursue civil claims regarding 9/11. Plaintiff and the other

Class members waived those claims prior to December 18, 2015.

109.     The Government breached its contract with Plaintiff and each of the other Class

members by failing to apply the more favorable claims process and loss calculation provisions

from the 2011 Regulations, and instead retroactively subjecting their claims to a loss calculation

methodology that was contrary to the parties' agreement and that deprived them of compensation

to which they were entitled.

110.     Plaintiff and the Class sustained damages as a result of the Government's

wrongdoing. They did not receive the benefit for which they bargained.

## COUNT II - Breach of Contract (Implied-in-Fact)

111.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1–110 as

if fully set forth herein.

112.     Plaintiff brings this Count individually and on behalf of the other Class members,

in the alternative to Count I.

113.     If Plaintiff and the other Class members did not enter into express contracts with

the Government, then implied contracts may be inferred from the conduct and representations of

the parties and the surrounding circumstances, as set forth above.

114.    Plaintiff and the other Class members performed their obligations under the contract by waiving their rights to pursue civil claims related to 9/11. Plaintiff and the other Class members waived those claims prior to December 18, 2015.

115.    The Government breached its contract with Plaintiff and each of the other Class members by failing to apply the claims process and loss calculation provisions from the 2011 Regulations, and instead retroactively subjecting their claims to a loss calculation that was contrary to the parties' agreement and that deprived them of compensation to which they were entitled.

116.    Plaintiff and the Class sustained damages as a result of the Government's wrongdoing. They did not receive the benefit for which they bargained.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class he seeks to represent, respectfully requests that the Court enter judgment in their favor and against the United States Government, as follows:

a.  Entering an order certifying the Class, appointing Plaintiff as representatives of the Class, and appointing Plaintiff's attorney as Class Counsel;

b.  Entering a judgment declaring that Plaintiff and each of the other Class members entered enforceable contracts with the U.S. Government that the U.S. Government breached;

c.  Awarding damages to Plaintiff and each of the members of the Class he represents in amounts to be determined at trial;

d.  Declaring that Plaintiff and all other members of the Class are to be included in Group A for all future engagement with the VCF, including any claim amendments and/or appeals;

e. Awarding reasonable attorney's fees and costs; and

f. Awarding other relief that the Court deems just and proper.


Respectfully submitted,


Dated:  _____October 6, 2023_____        /s/ Jeremy S. Spiegel_____
                                            Jeremy S. Spiegel, Esq.
                                            **LAW OFFICE OF JEREMY SPIEGEL**
                                            1 South Broad Street, Suite 1500
                                            Philadelphia, PA 19107
                                            Tel. (215) 609-3154
                                            Spiegel@JeremySpiegelLaw.com