# In the United States Court of Federal Claims

|  |  |
|---|---|
| MICHAEL WHITE,<br><br>                    *Plaintiff,*<br><br>    v.<br><br>THE UNITED STATES,<br><br>                    *Defendant.* | No. 23-383C<br>(Filed March 4, 2025) |

Jeremy S. Spiegel, Law Office of Jeremy Spiegel, Philadelphia, PA, for plaintiff.

Eric E. Laufgraben, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER
### Denying the Government's Motion to Dismiss

**SILFEN,** *Judge.*

Michael White brings this action against the government for breach of contract. Mr. White was a firefighter who volunteered as a first responder after the September 11, 2001, attacks in New York City and developed respiratory problems as a result. He alleges that he entered into a contract with the government when he filed a claim with the September 11th Victim Compensation Fund and in exchange waived his right to bring a civil suit for any September 11th-related injury. After Mr. White filed his claim and waived his right to sue, Congress changed the compensation structure for applicants, and the special master charged with administering the fund amended the corresponding regulations. The special master applied the new formula from the amended regulations to calculate Mr. White's compensation. Mr. White argues that by applying the amended

regulations rather than the regulations that were in place at the time of his claim, the government breached the contract and deprived him of the promised formula and resulting compensation. The government moves to dismiss for lack of subject-matter jurisdiction—arguing that Mr. White's suit is untimely because the statute of limitations began to run when the amended regulations went into effect more than six years before Mr. White brought suit—and for failure to state a claim— arguing that Mr. White does not plausibly allege the existence of a contract. Mr. White's claim is timely and he plausibly alleges that he entered into a contract with the government and that the government breached that contract. The court therefore **denies** the government's motion to dismiss.

## I.     Background

Mr. White is a former Philadelphia firefighter and U.S. Navy submariner. ECF No. 13 at 3 [¶14]. After the September 11th attacks, Mr. White volunteered as a first responder to rescue victims trapped beneath the rubble at Ground Zero. *Id.* at 4 [¶16]. Mr. White worked at Ground Zero for about six days without proper protective equipment. *Id.* at 4 [¶17]. Mr. White later developed respiratory issues. *Id.* at 3-4 [¶¶14, 18]. He now undergoes regular respiratory therapy and has been hospitalized multiple times. *Id.*

Congress created the September 11th Victim Compensation Fund in 2001 to compensate those who were injured and the families of those who died in the attacks. Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, tit. IV, 115 Stat. 230, 237-41 (2001) ("2001 Act"). Congress established a special master position to review claims and administer the fund. *Id.* The fund was initially open for about two years, but Congress reopened it, starting in 2011, and broadened its scope to compensate people who were injured during debris removal, whose injuries may have surfaced later. ECF No. 13 at 6 [¶¶32-34]; James Zadroga 9/11 Health and Compensation

Act of 2010, Pub. L. No. 111-347, 124 Stat. 3623 (2011) ("2010 Act"); 28 C.F.R. § 104.1 (2011) (available at 76 Fed. Reg. 54112, 54120 (Aug. 31, 2011), copy included at ECF No. 13-1).

In 2011, the special master promulgated regulations to administer the fund. The special master promised to compensate claimants through a formula that addressed both economic and non-economic losses. 76 Fed. Reg. at 54116. For a living claimant who had suffered physical harm, the special master would calculate non-economic losses based on the claimant's general medical condition. 28 C.F.R. §§ 104.2, 104.51 (2011). There was no cap on non-economic losses for a particular claimant, irrespective of whether the claimant had cancer or not. 28 C.F.R. § 104.46 (2011); *see also* 76 Fed. Reg. at 54114-15.

The regulations also provided that claimants were "entitled to have their claims processed in accordance with the provisions of this Part that were in effect at the time that their claims were submitted." But it was the claimant's responsibility to "notif[y] the Special Master that he or she has elected to have the claim resolved under the regulations that were in effect at the time that the claim was submitted." 28 C.F.R. § 104.6 (2011). Otherwise, "[a]ll claims will be processed in accordance with the current provisions of this Part." *Id.* Neither the regulations nor any guidance gave a claimant a deadline by which he had to notify the special master of his election. *Id.*; ECF No. 26 at 16:23-17:2 (government counsel confirming that there were no "rules in place for when [Mr. White] needed to make that request").

To participate in the fund, a claimant had to waive his right to sue for damages related to the September 11th attacks. 28 C.F.R. § 104.22(b)(1), (d) (2011).

Mr. White chose to participate in the fund and, in 2013, filed a claim requesting compensation for respiratory and gastrointestinal conditions that began after his work at Ground Zero. ECF No. 13 at 11 [¶66]. On the government-provided claim form, Mr. White acknowledged that,

by filing a claim, he "waiv[ed] the right to file a lawsuit … in any federal or state court for damages sustained as a result of" the September 11th attacks. *Id.* at 11 [¶¶67-68]; ECF No. 13-3 at 2-3 (Mr. White's signed form and waiver of rights). In 2014, Mr. White received a letter explaining that he was eligible for compensation for two injuries: esophageal reflux and obstructive chronic bronchitis without exacerbation. ECF No. 13-4 at 1. The letter explained that the special master would next determine his compensation. *Id.* The letter also repeated that Mr. White had "waived [his] right to file or be a party to a September 11th-related lawsuit." *Id.*

In 2015, before Mr. White received a compensation decision, Congress modified the fund, extending the time for claim submissions and making additional funds available. James Zadroga 9/11 Victim Compensation Fund Reauthorization Act, Pub. L. No. 114-113, div. O, tit. IV, 129 Stat. 2242, 3000-18 (2015) ("2015 Act"). Following the passage of the 2015 Act, the special master amended the regulations, modifying the compensation process and formula. *Compare* 28 C.F.R. §§ 104.2, 104.51 (2011) *with* 28 C.F.R. §§ 104.2, 104.51 (2016). The new regulations went into effect in June 2016. Interim Final Rule on the James Zadroga 9/11 Victim Compensation Fund Reauthorization Act, 81 Fed. Reg. 38936 (Jun. 15, 2016). The amended regulations established two different groups for compensation purposes: Group A represented claimants who had received a final award determination from the special master on or before December 17, 2015. Group B represented all other claimants. 28 C.F.R. §§ 104.1, 104.2(a). Mr. White fell into group B. *See* ECF No. 13 at 13 [¶79]. The compensation formula for group A was unchanged. For group B, there was a new formula, which reduced the compensation available to living claimants without a cancer diagnosis. 28 C.F.R. §§ 104.45(e), 104.46. The amended regulations also imposed a $90,000 cap on non-economic damages for a living claimant without a cancer diagnosis. 28 C.F.R. § 104.46.

The amended regulations also changed the provision entitling claimants to request that the special master apply the earlier version of the regulations. The new rule 104.6 stated, in full, "All claims will be processed in accordance with the current provisions of this part." 28 C.F.R. § 104.6.

In January 2017, Mr. White received a letter from the special master awarding him $90,000 in non-economic damages, calculated under the new formula. ECF No. 13 at 12 [¶72]; ECF No. 13-5. Mr. White appealed that decision to the special master and requested that the special master apply the 2011 formula, which was in place at the time he submitted his claim and which he argued would have increased his overall compensation. ECF No. 13 at 12-13 [¶¶73, 78]. In April 2017, Mr. White attended a hearing on his appeal and reiterated his request that the special master apply the 2011 regulations to his claim. *Id.* at 12 [¶74]. In July 2017, the special master issued a letter determining that "the loss calculation in the January 11, 2017 letter is correct and no change is warranted" and explaining that the letter was "the final decision on [Mr. White's] appeal." ECF No. 13-6 at 2; *see* ECF No. 13 at 13 [¶¶75-76].

Mr. White sued in this court in March 2023, alleging that, by applying for compensation through the special master and waiving his right to sue for that compensation, he entered into a contract with the government. ECF No. 13 at 16-18 [¶¶94-108]. He alleges that the government breached the contract by refusing to apply the formula that was in place when he first sought compensation from the special master. *Id.* at 13, 18 [¶¶78, 109-110].

## II.    Discussion

The government moves to dismiss Mr. White's complaint under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). ECF No. 15. The government argues that the court should dismiss Mr. White's claims for lack of jurisdiction because his suit is untimely, filed more than six years after his alleged claims accrued, and because Mr. White fails to plausibly allege the existence of a contract. *Id.*

On a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1), the "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

On a motion to dismiss for failure to state a claim under rule 12(b)(6), the court must accept well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court is not required to accept the parties' legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint must be dismissed under Rule 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citing *Lindsay*, 295 F.3d at 1257; *Iqbal*, 556 U.S. at 679). A party must plead "only enough facts to state a claim to relief that is plausible on its face … [to] nudge[] [a] claim[] across the line from conceivable to plausible" to avoid dismissal under RCFC 12(b)(6). *Twombly*, 550 U.S. at 547.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *See* 28 U.S.C. § 1491(a)(1); *see also Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994). The Tucker Act gives the court jurisdiction to decide, among other things, "actions pursuant to

contracts with the United States." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

Those contracts can be express or implied. 28 U.S.C. § 1491(a)(1).

The statute of limitations for filing a claim in this court is six years. 28 U.S.C. § 2501. The

six-year statute of limitations is considered "jurisdictional," meaning that the court is required "to

decide a timeliness question despite a waiver" and is forbidden from considering "whether certain

equitable considerations warrant extending a limitations period." *John R. Sand & Gravel Co. v.

United States*, 552 U.S. 130, 133-34 (2008).

To establish jurisdiction, a plaintiff must allege the existence of a contract with the gov-

ernment. *Gould, Inc. v. United States*, 67 F.3d 925, 929-30 (Fed. Cir. 1995). If the plaintiff fails to

establish the existence of a contract, the court must dismiss the complaint for failure to state a

claim. *Id.* at 929-30.

To prove existence of a contract with the government, a plaintiff must plausibly allege four

elements: (1) mutuality of intent to contract; (2) unambiguous offer and acceptance; (3) consider-

ation; and (4) actual authority to contract. *Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.

Cir. 1998). An implied-in-fact contract has the same elements as an express contract but is founded

upon a "meeting of minds" and "the conduct of the parties showing, in the light of the surrounding

circumstances, their tacit understanding" that there is an agreement. *Hanlin v. United States*, 316

F.3d 1325, 1328 (Fed. Cir. 2003) (quoting *Baltimore & Ohio Railroad Co. v. United States*, 261

U.S. 592, 597 (1923), marks omitted).

### A.      Mr. White's suit is timely

The statute of limitations under 28 U.S.C. § 2501 begins to run when "all the events have

occurred that fix the defendant's alleged liability and entitle the plaintiff to institute an action."

*Ariadne Financial Services Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998) (marks

omitted); *see Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc).

The government argues that Mr. White's cause of action accrued, and the limitations period began to run, at the latest, when the special master's amended regulations went into effect in June 2016. ECF No. 15 at 11-13. According to the government, even assuming Mr. White entered into a contract with the government by filing a claim with the special master, the government became liable for a breach of contract when the law changed. *Id.* at 11-12. According to the government, the change in law precluded the government from performing its contractual promise of applying the 2011 formula for compensation. *Id.* The new law took effect in December 2015, and the amended regulations implementing that law took effect in June 2016. The government argues that the statute of limitations therefore expired six years later, in December 2021 or, at the latest, in June 2022. *Id.* at 12-13. Both those dates are before the date Mr. White's filed his complaint in this court. *Id.*

Mr. White responds that his complaint is timely because a change in law is not itself a breach of contract. ECF No. 18 at 23. Instead, Mr. White argues that the change in law at most represents a repudiation of the contract, and the government's breach did not occur until July 2017, when the special master issued a final decision refusing to apply the 2011 regulations. *Id.* at 23-25; ECF No. 24 at 2-3.

Mr. White is correct that, to the extent that he had a contract with the government, the 2015 legislation and the 2016 amendments to the corresponding regulations did not constitute a breach of the contract. Instead, a breach could occur only once the new statute or new regulations were applied to him.

In *Franconia Associates v. United States*, 536 U.S. 129, 139 (2002), the Supreme Court addressed a related situation. The Federal Circuit had held that the government breached its contract with the plaintiffs when the law changed, and the plaintiffs' claims accrued then. *Id.* at 139.

8

Disagreeing with the Federal Circuit, the Supreme Court held that the change to the law constituted a repudiation of the contract, rather than a breach. *Id.* at 142-44. According to the Supreme Court, even under the new law's provisions, the plaintiffs could still await a government action before treating the government's action as a breach. *Id.* at 142-43. Here, as in *Franconia*, the change in the special master's regulations did not require Mr. White to immediately act as if the government had breached a contract with him. Instead, Mr. White was affected only when the new law and regulations were applied to him—that is, when he asked the government to apply the 2011 formula to him and the government said no, explaining that it was going to apply the new 2016 formula to calculate his compensation.

Similarly, in *Amber Resources Co. v. United States*, 538 F.3d 1358, 1364 (Fed. Cir. 2008), Congress had amended the Coastal Zone Management Act (CZMA) in 1990 to apply to new areas. The parties initially did not read the amendments as applying to their lease agreements. *Id.* at 1369. Then, in 2001, a district court decision, affirmed on appeal, made it "apparent to the parties that the 1990 CZMA amendments applied to … the leases at issue in this case." *Id.* at 1370. The Federal Circuit held that "the enactment of the 1990 CZMA amendments constituted a repudiation"; "the breach did not occur until after the decision" by the district court; and "any actions taken by the [parties] between 1990 and the 2001 ruling … cannot be understood as reflecting continued post-breach performance by the [parties] or constituting an election to continue performance in spite of a breach." *Id.* at 1370, 1376. Similarly, here, the 2015 Act and 2016 amendments to the regulations represented at most a repudiation of the Victim Compensation Fund's 2011 regulations, and the alleged breach did not occur until July 2017 when the special master denied Mr. White's request to have the 2011 regulations applied.

This case is analogous to other administrative law situations in which a rule changes. Many courts have addressed, and the Supreme Court has recently ruled on, the question of when a party needs to sue an agency after the agency issues a rule. Because the agency could issue the rule before the private party might be affected or even before the private party exists, the Supreme Court explained that a "statute of limitations does not begin to run until [a plaintiff] is injured," or until the rule is applied to the plaintiff, and the plaintiff has a "complete and present cause of action." *Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799, 809-10 (2024). The Federal Circuit has likewise explained that "[f]or substantive challenges the right of action accrues either when the agency makes its initial decision [in a plaintiff's case] or at the time of an adverse application of the decision against the plaintiff, whichever comes later." *Hyatt v. United States Patent and Trademark Office*, 904 F.3d 1361, 1372 (Fed. Cir. 2018).

The government, citing *Shane v. United States*, 161 F.3d 723, 727 (Fed. Cir. 1998), argues that the statute of limitations began to run when the new law took effect in December 2015 or, at the latest, when the amended regulations took effect in June 2016. ECF No. 15 at 11-13. But the Federal Circuit's more recent decision in *Hyatt* and the Supreme Court's even more recent decision in *Corner Post* both undercut the government's argument. *See Corner Post*, 603 U.S. at 809-13; *Hyatt*, 904 F.3d at 1372.

Under 28 C.F.R. § 104.6 (2011), Mr. White understood that he was entitled to "have [his] claims processed in accordance with the provisions … in effect at the time that [his] claims were submitted" if he "notified the Special Master that he … has elected to have the claim resolved under the regulations that were in effect at the time that the claim was submitted." The 2011 regulations did not specify a deadline for Mr. White to notify the special master that he wanted his claims resolved under the 2011 regulations—the regulations in place at the time that he submitted

his claim. ECF No. 26 at 16:23-17:2 (government counsel confirming that there were no "rules in place for when [Mr. White] needed to make that request"); *see* 28 C.F.R. § 104.6 (2011). Although the later 2016 rule 104.6 stated that the special master would apply "the current provisions," Mr. White reasonably could have understood that the special master would allow him to elect to apply the 2011 version of rule 104.6, which allowed him to elect the regulations in force when he filed his claim. Thus, until Mr. White requested that the special master apply the 2011 regulations and the special master refused—at least until the special master's decision became final—Mr. White reasonably could have thought that the special master might make a different decision. The alleged breach did not happen at the time Congress passed the 2015 Act or when the special master issued the new 2016 regulations; at those times, Mr. White reasonably believed that he could still have the 2011 regulations applied to him.

Those facts also distinguish *United States v. Winstar Corp.*, 518 U.S. 839 (1996), another case on which the government relies. ECF No. 15 at 11-12. In *Winstar*, the Supreme Court held that the government's liability was fixed when the law changed and rendered the government unable to perform its earlier promise, not when the government took action against individual parties under its new policy. 518 U.S. at 870. But there, the parties knew from the outset that they had no chance of prevailing once the government repudiated its promise. *Id.* at 868-70 (explaining that, in that case, "the risk that legal change will prevent the bargained-for performance is always lurking in the shadows"). Here, on the other hand, Mr. White did not know that he could not get the benefit of the 2011 regulations, which those regulations allowed him to request, until the special master refused his request to have the 2011 regulations applied to him.

Mr. White requested that his award be calculated under the 2011 regulations in March 2017, after he received the special master's January 2017 initial determination and within his time

to appeal that initial determination. ECF No. 13 at 12 [¶¶72-74]; *see* ECF No. 13-5 at 2-3. The special master denied his request in July 2017. *Id.* at 13 [75]. It was only then that Mr. White knew that the government would not be willing to apply the 2011 regulations to his claim. That July 2017 decision was when Mr. White's claim accrued. *Ariadne Financial Services*, 133 F.3d at 879; *Martinez*, 333 F.3d at 1303. Because Mr. White filed his suit less than six years after that July 2017 decision—in March 2023—his suit is not barred by the statute of limitations.

**B.    Mr. White plausibly alleges the existence of an express contract with the government**

The government argues that Mr. White does not state a claim that he had a contract with the government. ECF No 15 at 14. It asserts that Mr. White has failed to plausibly allege three of the four elements of a contract: an unambiguous offer and acceptance; the parties' mutual intent to contract; and the government's authority to contract. *Id.* Mr. White responds that the parties did have a contract. He alleges that the government made an unambiguous offer, which he accepted, thus showing a mutual intent to contract, that there was consideration, and that the special master had the authority to contract with him. *See* ECF No. 18 at 33-46.

**1.    Offer and acceptance**

The government argues that Mr. White does not plausibly allege an offer because he does not identify anything in the 2001 or later Acts, the regulations, or his claim form that shows the government's "willingness to enter into a bargain." ECF No. 15 at 22. Mr. White responds that the 2001 and 2010 Acts, the 2011 regulations, and the claim form collectively represent an offer. ECF No. 18 at 42-44; ECF No. 13-3. Mr. White alleges that by submitting a claim and waiving his right to pursue September 11th-related damages claims, he unambiguously accepted the offer. ECF No. 18 at 43-44.

An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (quoting Restatement (Second) of Contracts § 24 (1981)) (marks omitted). Acceptance is "a manifestation of assent to the terms [of the offer] made by the offeree in a manner invited or required by the offer." *Id.* at 1355 (quoting Restatement (Second) of Contracts § 50(1)) (marks omitted). The offer and acceptance cannot be ambiguous. *Id.* at 1353.

The government's offer can be memorialized in documents that, "when read together, could provide evidence of an intent to contract." *Anderson*, 344 F.3d at 1354. Read together, the 2001 and 2010 Acts, the 2011 regulations, and the claim form plausibly show the government's intent to contract, and Mr. White's filing the form shows his acceptance. The 2001 and 2010 Acts and 2011 regulations allow a claimant to file a claim and explain what will happen next. *See* 2001 Act §§ 405-06, 115 Stat. at 238-240 ("The Special Master shall develop a claim form that claimants shall use …. The Special Master shall review a claim submitted … and determine … whether the claimant is eligible[,] … the extent of harm[,] … [and] the amount of compensation … [n]ot later than 120 days after … a claim is filed …. Such a determination shall be final and not subject to judicial review …. Not later than 20 days after the date [of] determination … the Special Master shall authorize payment to [the] claimant of the amount determined."); 28 C.F.R. § 104.22 (requiring the special master to develop a claim form requesting specific information; *id.* §§ 104.31-32 (requiring the government to review eligibility and providing for appeal of denied claims); *id.* § 104.41 (setting out compensation structure); *id.* § 104.51 (requiring the government to pay by a deadline).

The 2001 and 2010 Acts, the 2011 regulations, and the claim form further explain that the claimant is giving something up in exchange—the claimant is waiving the right to sue for damages. 2001 Act § 405, 115 Stat. at 238-240; 2010 Act § 202, 124 Stat. at 3360-62; 28 C.F.R. §§ 104.6, 104.22, 104.6(b)(1), (d) (2011), ECF No. 13-3. The 2001 and 2010 Acts were designed to encourage claimants to choose the out-of-court process over litigation, which Mr. White chose. *See* 2001 Act § 405, 115 Stat. at 238-240 (stating that an individual who is already party to a civil action in court "may not submit a claim under this title unless [he] withdraws from such action" within 90 days of promulgation of the act); 2010 Act § 202, 124 Stat. at 3360-62 (also giving potential claimants 90 days after promulgation of the act to withdraw from pending court cases). Mr. White and the government agreed to those terms.

### 2. Mutual intent

The government argues that Mr. White's amended complaint fails to plausibly show that the parties had a mutual intent to contract and argues that, absent certain indicia, legislation does not form a contract. ECF No. 15 at 16-18 (citing *American Bankers Association v. United States*, 932 F.3d 1375, 1381-83 (Fed. Cir. 2019)). The government asserts that Mr. White identifies none of those indicia, such as promissory language providing for execution of a written contract. *Id.* The government adds that Mr. White's reliance on the 2011 regulations is misplaced. *Id.* at 19. The regulations, according to the government, do not speak of a contract or provide for the execution of a written agreement between Mr. White and the United States. ECF No. 20 at 13. Nor do the regulations contain any language indicating that any rights conferred under them were intended to be part of any exchange of promises, according to the government. *Id.* The government argues that if Congress "intended to provide a contractual guarantee or indemnity" in the fund, "'it easily could have drafted language to that effect.'" *Id.* (quoting *Gallardo v. Marstiller*, 596 U.S. 420, 421 (2022)). Finally, the government argues that the statutory waiver in section 405 of the 2001 Act

"speaks of claims—not contracts—and requires waiver as a condition of [Victim Compensation Fund] eligibility." *Id.* at 12 (marks omitted).

Mr. White responds that the language of the 2011 regulations is evidence of the parties' intent to contract. ECF No. 13 at 1-2 [¶3], 7 [¶¶39-40], 9 [¶50], 16 [¶¶97-98] (citing 28 C.F.R. § 104.6 (2011)); ECF No. 18 at 38-39. Mr. White argues that the 2011 regulations explicitly promised that, even in the event of an amendment to those regulations, he had the right to have his claim processed in accordance with the regulations in effect at the time he submitted his claim, and the 2011 regulations were in effect at that time. ECF No. 18 at 37-39; *see* 28 C.F.R. § 104.6 (2011). That promise in the regulation, he argues, is evidence of the government's intent to contract. ECF No. 18 at 38-39. Mr. White also argues that the claim form itself—which requires claimants to acknowledge that, by submitting the form, they are waiving their September 11th-related civil claims—reflects an intent to form contracts with claimants. Mr. White alleges that the claim form manifested the government's offer that a claimant could file a claim in exchange for waiving his right to sue. ECF No. 18 at 17, 29.

"[T]o prove … a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance." *Anderson*, 344 F.3d at 1353. Generally, courts presume that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise," absent clear evidence to the contrary. *National Railroad Passenger Corp. v. Atchison Topeka & Santa Fe Railway Co.*, 470 U.S. 451, 465-66 (1985) (citation omitted). Thus, "the party asserting the creation of a contract must overcome this well-founded presumption." *Id.* at 466. Mr. White has plausibly overcome that presumption.

Despite the presumption that legislation and regulation do not reflect the government's intent to bind itself, the government can contract through statutes and regulations. *Fifth Third Bank of Western Ohio v. United States*, 402 F.3d 1221, 1234-35 (Fed. Cir. 2005). The government cites several cases related to mutual intent where this court and the Federal Circuit determined that a statute or regulation did not reflect the government's intent to contract. ECF No. 15 at 15-17. But in those cases, the statutes and regulations did not "reflect a bargained-for quid pro quo between two parties." *American Bankers*, 932 F.3d at 1383; *cf. e.g.*, *Brooks v. Dunlop Manufacturing Inc.*, 702 F.3d 624, 630-32 (Fed. Cir. 2012) (the statute at issue had no quid-pro-quo language and did not promise any protection in the event of an amendment to the law); *Boyd v. United States*, 22-1473C, 2023 WL 3118132, at *3 (Fed. Cl. Apr. 27, 2023) (the statute "d[id] not have any requirement that [claimants] provide anything in exchange for a payment by the Government"); *Baker v. United States*, 50 Fed. Cl. 483, 493 (2001) (the regulation at issue did not "make an explicit promise … to justify another person in understanding that his assent to that bargain will conclude it"). Here, the 2011 regulations reflect a quid-pro-quo offer: Mr. White releases all civil claims for damages in exchange for the government's commitment to review his claim under the regulations in place at the time of his filing. *See* 28 C.F.R. §§ 104.6, 104.22(b)(1), (d) (2011).

In *First Commerce Corp. v. United States*, the Federal Circuit explained that "the characterization of [a transaction as] 'regulatory' or 'supervisory' [does not] absolve the government of its contractual liability if it is shown that the government has indeed bound itself by contract." 335 F.3d 1373, 1383 (Fed. Cir. 2003). "If the elements of contract formation are absent, then the government was acting solely in its regulatory capacity; if a contract was formed, then the government may be liable for its breach. To assert that the government was acting solely in its regulatory capacity is to assert a conclusion about contractual liability, not a premise that negates it." *Id.*

16

(internal quotations omitted). While the Federal Circuit in *First Commerce* held that there was no mutual intent to contract because the plaintiff could not "identify with particularity an offer memorializing the terms" the plaintiff allegedly proposed to the government, the court of appeals acknowledged that the analysis should not be "confined to the four corners of a single document to find an offer (or acceptance)." *Id.* at 1380; *see also Anderson*, 344 F.3d at 1354 ("multiple related documents, when read together, could provide evidence of an intent to contract").

At the oral argument, the government argued than an individual's waiver of the right to sue the government does not imply that the government has entered into a contract and cited this court's administration of the Vaccine Act program as an example. ECF No. 26 at 27:22-28:6. Under that program, a plaintiff files a claim in this court and thereby waives his right to sue elsewhere. *See* 42 U.S.C. § 300aa-11(a). But that is a court filing, which, through preclusion and stare decisis principles, necessarily involves a party's binding itself to a choice of forum. A Vaccine Act claimant can appeal that decision to the Federal Circuit and seek Supreme Court review. Here, by contrast, a claimant gives up all rights to sue in a court—including appeals—by choosing the Victim Compensation Fund. 28 C.F.R. § 104.22(b)(1), (d); 2001 Act § 405(c)(3)(B), 115 Stat. at 239-40; 2010 Act § 202(f)(3), 124 Stat. at 3361-62.

In this case, although no single document contains an offer and acceptance, Mr. White has plausibly alleged that the statute, regulations, and claim form show the government's intent to contract if he accepts the government's offer. *See* 2001 Act § 405, 115 Stat. at 238-240; 2010 Act § 202, 124 Stat. at 3360-62; 28 C.F.R. §§ 104.6, 104.22(b)(1), (d) (2011); ECF No. 13-3. Those statements show that a claimant would give up the right to sue, and the government would apply the earlier regulations if asked. Mr. White has met his burden at this stage to show mutuality of intent. *See Anderson*, 344 F.3d at 1353; *Twombly*, 550 U.S. at 547.

17

The government makes other arguments that do not negate the evident mutual intent to contract. For example, the government argues that treating the 2011 regulations as a contractual duty interferes with Congress's ability to modify the program. ECF No. 15 at 19. But Mr. White's argument is exactly that Congress agreed not to modify the program for claimants who had already filed claims and who requested the earlier formula.

The government also argues that the 2011 regulations contained no guarantee that a claimant would receive a particular amount. ECF No. 15 at 20. But Mr. White is arguing that he was promised a particular methodology in calculating his award, not a particular amount. And regardless, no particular amount is required to show a mutual intent to contract. *See e.g. Ingham Regional Medical Center v. United States*, 874 F.3d 1341, 1346-47 (Fed. Cir. 2017) (holding that the breach-of-contract claim was not barred and that the government had an obligation to follow an agreed-upon payment methodology); *LaBatte v. United States*, 899 F.3d 1373, 1375, 1378-79, 1381 (Fed. Cir. 2018) (holding that the plaintiff plausibly alleged a breach-of-contract claim against the government in a compensation fund settlement program where claim determinations were made on a case-by-case basis).

### 3.    Consideration

Although the government chose not to address it in its briefs (ECF No. 20 at 9 n.3), Mr. White argues that his complaint also plausibly alleges another element of a contract: consideration. ECF No. 18 at 5, 9, 26, 36, 45. Mr. White argues that the statute and regulations contained an "explicit promise" by the government to evaluate his claim in accordance with the 2011 regulations if he agreed to waive September 11th-related civil claims. *Id.* at 37.

"To constitute consideration, a performance or a return promise must be bargained for." *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1061 (Fed. Cir. 2002) (citing Restatement (Second) of Contracts §71(1)). "A performance or return promise is bargained for if it is sought

… in exchange for [a] promise and is given." *Steinberg v. United States*, 90 Fed. Cl. 435, 444 (2009) (citing Restatement (Second) of Contracts §71(2)). The promise may be "a forbearance." Restatement (Second) of Contracts §71(3). By agreeing not to bring any September 11th-related civil claims against the government or others in exchange for the government's promise to evaluate his claims under the 2011 regulations, Mr. White has plausibly alleged that there was consideration. *See* Restatement (Second) of Contracts §71(1)-(3); *Steinberg*, 90 Fed. Cl. at 444.

### 4.    Authority to form contracts

The government finally argues that Mr. White does not plausibly allege a contract because he cannot prove that the special master has actual authority to contract. ECF No. 15 at 24-25. According to the government, the statute and regulations do not provide the special master with the unambiguous authority to contract on behalf of the government. *Id.* at 25. Mr. White responds that, at least the Attorney General, and therefore the special master, has implied authority because the special master carries out the Attorney General's duties under the 2001, 2010, and 2015 Acts, which include implementing the compensation program, processing claims, and issuing monetary awards. ECF No. 18 at 45-46. Mr. White adds that the Attorney General must have authority to contract to be able to implement the program under which claimants waive their rights, have their claims evaluated, and possibly receive compensation. *Id.* at 45. Mr. White argues that because the special master carries out those duties on behalf of the Attorney General, the special master must also at least have implied authority to perform those tasks. *Id.* at 45-46.

For the United States to contract, an authorized agent of the government must enter into the contract. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). "An employee of the Government possesses express authority to obligate the Government only when the Constitution, a statute, or a regulation grants it to that employee in unambiguous terms." *Garza v. United States*, 34 Fed. Cl. 1, 18 (1995). If the government agent does not have express authority, he or she

can still have implied actual authority. *See Fifth Third Bank of Western Ohio*, 402 F.3d at 1235-36 & n.6. "An employee of the Government has implied actual authority to enter an agreement only when that authority is an integral part of the duties assigned to [the] government employee." *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016) (cleaned up); *see also Roy v. United States*, 38 Fed. Cl. 184, 190 n.18 (1997) (stating that the plaintiff would have had a stronger claim for implied actual authority if the government agents had promised or approved a payment for the plaintiff), *appeal dismissed*, 124 F.3d 224 (Fed. Cir. 1997). "Authority is integral when the government employee could not perform his or her assigned tasks without such authority." *Liberty Ammunition*, 835 F.3d at 1402 (cleaned up).

The 2001 Act vests the Attorney General "acting through a Special Master" with the authority to "administer the compensation program." § 404(a)(1)-(2), 115 Stat. at 237. Administering the program means processing each claimant's filing, making a final award determination, and approving the payment of the final award. Those duties, which, like settlement of litigation, are contractual in nature, are "integral part[s] of the duties assigned" to the special master. *Liberty Ammunition*, 835 F.3d at 1402; *see Roy*, 38 Fed. Cl. at 190 n.18 (discussing approval of payments as indicative of authority to contract). Thus, Mr. White plausibly alleges that the special master had actual authority to enter into a contract.

\*    \*    \*

Mr. White plausibly alleges the required elements of a contract.

## III.    Conclusion

For the reasons stated above, this court **denies** the government's motion to dismiss. The government **shall file** its answer by March 18, 2025.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge