IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MICHAEL WHITE, on behalf of himself and all others similarly situated, | : <br> : **Case No. 23-383** <br> : |
| Plaintiff, | : **Judge Silfen** <br> : |
| v. | : <br> : |
| THE UNITED STATES OF AMERICA, | : <br> : |
| Defendant. | : <br> : |

**PLAINTIFF MICHAEL WHITE'S BRIEF IN RESPONSE TO THE COURT'S JUNE 12, 2025 ORDER REGARDING THE POSSIBLE SCOPE OF THE CLASS**

This action concerns a bait-and-switch perpetrated by the United States Government against Plaintiff Michael White ("Plaintiff" or "Mr. White") and several thousand 9/11 first responders. Mr. White, a proud U.S. Navy veteran, has brought suit to recover damages on his own behalf and for those who have similarly been wronged by the Government's conduct in connection with the 9/11 Victim Compensation Fund.

In his Amended Complaint, Mr. White alleged that he is bringing this action on behalf of a putative class including:

> All 9/11 Victim Compensation Fund claimants who, in pursuing VCF compensation: waived their right to bring civil actions concerning damages related to the 9/11 attacks prior to December 18, 2015 and had compensation calculated pursuant the "Group B" standards set forth in the 2016 Amended VCF Regulations, and who: 1) had claims for non-cancer conditions, or 2) had gross income at the time of their VCF claim that exceeded $200,000."

Amended Complaint (Dkt. 13) at ¶ 79. This allegation accurately set forth the contours of the plaintiff class in this matter.

Based on information currently available, and without the benefit of discovery, Mr. White believes that a class in this matter should include all VCF Claimants who: 1) filed their VCF

claims prior to the Government's promulgation of the 2016 Amended VCF Regulations in or about June 2016; 2) did not receive a Government VCF compensation award prior to the promulgation of the 2016 Amended Regulations; 3) had their VCF award calculated pursuant the "Group B" methodologies and limitations set forth in the 2016 Amended VCF Regulations; 4) either (A) had a claim for a "non-cancer" condition; (B) had projected gross income that would have exceeded $200,000 for one or more years in the VCF economic loss calculation, but for the limitations imposed pursuant to the Amended Regulations; (C) had a claim for future medical expenses; or (D) received a VCF award in the amount of $0 on account of collateral offsets that exceeded the award amount; and 5) received their VCF compensation payment on or after March 17, 2017.

Potential class members need not have requested that the Special Master evaluate their claim under the 2011 Regulations. As a result of the Government's anticipatory repudiation of its obligations under the parties' contract, VCF claimants had the option to await the Government's performance, or to place the Government in breach prior to the performance date. The class should include VCF claimants who took either approach.

Consistent with RCFC 23(c), and subject to modification pending discovery, Plaintiff intends to move the Court for a ruling certifying a class consistent with that described above.

I. **Legal Analysis**

As detailed in the Amended Complaint and briefing on the Government's motion to dismiss, the Government entered into a contract with 9/11 VCF claimants. The Government offered for claimants, like Mr. White, to waive any civil claims for 9/11-related damages, including claims against the Government. In exchange, claimants could participate in the Government's VCF claims process pursuant to the VCF regulations then in place.

At the time that Mr. White and class members filed their VCF claims, the 2011 Regulations were in effect. Those regulations placed no upper limit on non-economic damages for VCF claimants – including claimants not suffering from cancer. *See generally* 2011 Regulations (Dkt. 13-1). The 2011 Regulations also limited income for purposes of calculating economic damages to the 98th percentile of individual income in the United States – approximately $368,000 in 2011, provided for the award of future medical expenses, and allowed for a minimum award of $10,000. *Id.* In addition, under the 2011 Regulations the VCF did not deprioritize claims from claimants with less debilitating physical conditions. *Id.* Finally, the 2011 Regulations established that Claimants were "entitled to have their claims processed in accordance with the provisions of [the VCF Regulations] that were in effect at the time that their claims were submitted." *Id.* at 28 CFR § 104.6.

Following passage of the 2015 Zadroga Act Reauthorization, the Government promulgated new regulations (the "Amended Regulations") regarding the VCF program. The Amended Regulations placed Mr. White and all other claimants who had not received a "final award determination" on or before December 18, 2015 into a "Group B." The Amended Regulations then imposed a series of limitations on Group B awards. *See generally* Amended Regulations (Dkt. 13-2).

The Amended Regulations limited the pain and suffering ("non-economic") damages for Group B non-cancer claimants to $90,000.[1] *Id.* The Amended Regulations also imposed a maximum gross income of $200,000 for purposes of Group B economic loss calculations. *Id.* Further, as part of the Amended Regulations, the Government eliminated the $10,000 minimum

---

[1] The Amended Regulations imposed a $250,000 limit on non-economic damages for Group B claimants with cancer. To the extent that this limitation decreased VCF awards for persons who had filed claims prior to implementation of the Amended Regulations, those affected claimants would also be members of the plaintiff class.

3

award, and eliminated future medical expenses as a recoverable category. *Id.* Additionally, the VCF Amended Regulations stated that, "[a]ll claims will be processed in accordance with the current provisions of this part." *Id.* at 28 CFR § 104.6.

The Government's changes to the regulations, and its implementation of those changes, constituted an anticipatory repudiation of its contractual commitments to VCF claimants. The Government took the position that, following promulgation of the Amended Regulations, Mr. White and other claimants were "preclude[ed] . . . from electing to use the prior regulatory framework[,]" Defendant's Reply in Support of Motion to Dismiss (Dkt. 20), at 9, and the Special Master was "required" to implement caps on all subsequent VCF award calculations, *id*. It was thus the Government's position that it would not honor the term of its contract providing that claimants were "entitled to have their claims processed in accordance with the provisions of [the VCF Regulations] that were in effect at the time that their claims were submitted." The Government communicated this repudiation to Group B claimants in the letter to those claimants issuing their initial award calculation. *See, e.g.*, White Loss Calculation Letter (Dkt. 13-5) (explaining that the Special Master's "determination" imposing a cap on non-economic damages was "in accordance with the requirements of the Reauthorized Zadroga Act").

In light of the Government's repudiation of its future obligations under the parties' contract, VCF claimants had two options: 1) to await performance by the Government under the contract – with the possibility that the Government would retract its repudiation prior to such performance, or 2) to "place [the Government] in breach before the performance date[.]" *Franconia Assocs. v. United States*, 536 U.S. 129, 144 (2002). Claimants who took either approach suffered damages from the Government's breach and are properly class members in this action.

### A.     Class Members Who Elected to Await Performance

Mr. White and certain other class members sought the Government's performance under the contract. They did so by either: 1) filing an appeal requesting payment beyond the amount calculated by the VCF under the Amended Regulations, as set forth in the Special Master's loss calculation letter, or 2) otherwise requesting that the Special Master apply the prior regulations to their claim.

With regard to the first subcategory, which includes Mr. White, these claimants received a loss calculation letter reflecting an award amount that was impacted by the methodology and limitations set forth in the 2016 Regulations. They then filed appeals seeking an award in excess of what the VCF had calculated.

Claimants' appeals constituted adequate notice that the claimants desired application of the prior regulations. At the time of the appeals, the Special Master was aware that the groups of claimants identified above (e.g., non-cancer claimants, those with projected incomes that would exceed $200,000) would see their awards diminished as a result of the Government's application of the 2016 Regulations. For example, in a May 2016 Update to Law Firms, the Special Master explained:

> [N]on-economic awards will be lower for certain conditions than they were under Group A, . . . . In some cases, typically involving milder conditions that have a limited effect on daily life, the non-economic award could be 50% lower. The statute also removes the minimum awards and you should prepare your clients for the possibility of $0.00 awards or awards less than $10,000. . . . Specific to economic loss, the statute caps AGI at $200,000 and sets forth the definition of what is included as income.

Ex. 1, Special Master Update to Law Firms, May 2016, at 1-2.

Nevertheless, the Special Master made no effort to alert claimants to any specific language that would be needed to have claims processed under the prior regulations. At the December 10, 2024 hearing on the Government's motion to dismiss, when asked whether the

VCF had "any rules promulgated or internal guidance or anything about" the manner by which claimants could request application of the prior regulations, counsel for the Government replied: "[T]here's no form, for instance, that you would check off, and there was never any sort of process about which I'm aware in which a person would have made such a request." *See* Ex. 2, Dec. 10, 2024 Hearing Tr., at 13:1-18. The Government knew that claimants had a contractual right to request application of the prior regulations, knew that the prior regulations were more favorable for many claimants, controlled the entire claims and appeals process, and yet created no mechanism to alert claimants or facilitate their request for application of the prior regulations.

    Against this backdrop, claimants' filing of appeals seeking awards greater than those calculated under the 2016 Regulations provided sufficient notice of their requests to apply the prior regulations. Mr. White's claim provides a representative example: he received a non-economic loss award that was constrained by limits imposed through the 2016 Amended Regulations. His appeal necessarily sought application of the prior regulations in order to provide for additional non-economic recovery. This was the same for claimants appealing awards that had been reduced due to income limitations for economic loss calculations, denial of future medical expenses, elimination of minimum awards, and deprioritization of certain claims. Claimants who pursued appeals seeking awards greater than those first calculated by the VCF "in accordance with the requirements of the Reauthorized Zadroga Act," and who received their wrongfully reduced awards on or after March 17, 2017, are properly in the plaintiff class.

### B. Class Members Who Placed the Government in Breach Prior to the Performance Date

Other class members placed the Government in breach following the Government's repudiation of its contractual commitments and prior to its performance under the contract. Faced with the Government's disavowal of claimants' contractual entitlement to have the 2011 Regulations applied, and its declaration that the Amended Regulations *required* application of the various Group B limitations, these claimants accepted the Special Master's initial, reduced loss calculation and gave up the right to seek application of the prior regulations. In so doing, these claimants placed the Government in breach prior to the date upon which performance would have otherwise been required. Accordingly, these claimants also belong in the class.

The Supreme Court in *Franconia* explained that "the promisor's renunciation of a contractual duty *before* the time fixed in the contract for performance is a repudiation . . . . Such a repudiation ripens into a breach prior to the time for performance only if the promisee elects to treat it as such." *Franconia*, 536 U.S. at 142-43 (bold added, internal quot., cit. and ellipses omitted). In *Saline Assocs. No. 1 Ltd. P'ship v. United States*, the Federal Circuit considered whether the plaintiff had elected to treat the Government's contractual repudiation as a breach. 766 F. App'x 962 (Fed. Cir. 2019). Applying *Franconia*, the circuit court adopted the standard that a non-repudiating party may treat a repudiation as a breach "either by bringing suit promptly, **or by making some change of position**." *Saline Assocs.*, 766 F. App'x at 967 (Fed. Cir. 2019) (quoting S. Williston & R. Lord, A Treatise on the Law of Contracts § 63:33 (4th ed. 2002)) (emphasis added).[2] *See also Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 754–55 (2004)

---

[2] The court then explored the timing of plaintiff's change of position before concluding that plaintiff's claim was untimely. *Id.* at 966-68.

(holding, on remand, that a "material change of position taken in reliance on the repudiation" can "be deemed to trigger a breach") (quoting Restatement (First) of Contracts § 318, cmt. D).

Here, VCF claimants materially changed their position following the Government's repudiation. A material change involves "definite action indicating that the anticipatory breach has been accepted as final." 23 Williston on Contracts § 63:55 (4th ed.). These VCF claimants accepted the Special Master's reduced award calculation, thereby closing their pending VCF claim and foregoing their contractual right to "have the claim resolved under the regulations that were in effect at the time that the claim was submitted." In so doing, these claimants foreclosed the possibility of the Government retracting its contractual repudiation. This action – "accepting the [Government's] anticipatory breach as final" – constituted a material change as it "closed the door to repentance" by the repudiating party. *See id.*

The potential class in this matter should therefore include those claimants who placed the Government in breach by changing their of position following the Government's anticipatory repudiation. The harm suffered by these claimants, in the form of diminished VCF compensation, is identical to that suffered by claimants who elected to await performance.

## II.  Responses to the Court's Questions

**1. Would a potential class member have to be a member of Group B who either had a non-cancer diagnosis—including a diagnosis not characterized as the most debilitating—or had a gross income higher than $200,000?**

Plaintiff requires additional information from the Government in order to answer this question with certainty. Based on available information, including public statements by the Special Master, Plaintiff believes that potential class members would have to meet the following criteria:

A) Class members must have filed their VCF claims prior to the Government's promulgation of the 2016 Amended VCF Regulations in or about June 2016;

B) Class members did not receive their VCF compensation award prior to the promulgation of the 2016 Amended Regulations;

C) Class members had their VCF compensation calculated pursuant the "Group B" methodologies and limitations set forth in the 2016 Amended VCF Regulations;

D) Class members either: (i) had a claim for a "non-cancer" condition; (ii) had projected gross income that would have exceeded $200,000 for one or more years in the VCF economic loss calculation, but for the limitations imposed pursuant to the Amended Regulations; (iii) had a claim for future medical expenses; or (iv) received a VCF award in the amount of $0 on account of collateral offsets that exceeded the award amount; and

E) Class members received their VCF compensation payment on or after March 17, 2017 – within six years of the date that Mr. White commenced this class action. *See* 28 U.S.C. § 2501.

Plaintiff requires additional information from the Government as to whether the Special Master's prioritization of the "most debilitating" claims or the $250,000 non-economic loss limitations on cancer claims imposed through the 2016 Amended Regulations reduced the loss calculations for claimants with cancer diagnoses. Any such claimants who received a reduced VCF award would also be potential class members.

**2. Before what date would a potential class member have to have requested adjudication from the Victims' Compensation Fund? Would he or she have to have filed a claim before December 2015 when Congress passed the act modifying the fund; before June 2016 when the subsequent amended regulations went into effect; or before some other date, and if it is another date, what is that date?**

Potential class members would have to have requested adjudication from the VCF while the 2011 Regulations remained in effect, and thus prior to the promulgation of the 2016 Amended Regulations in June 2016. *See* 2011 Regulations at 28 CFR 104.6 (Claimants are "entitled to have their claims processed in accordance with the provisions of this Part that were in effect at the time that their claims were submitted."). It is Plaintiff's understanding, subject to confirmation through discovery, that the VCF suspended claim filing upon passage of the Zadroga Act Reauthorization in or about December 2015, such that no new claims could be filed from that time until approximately July 2016 (after promulgation of the Amended Regulations).

**3. Would a potential class member have to either (a) have requested or attempted to request that he or she be evaluated under the 2011 regulations before being paid an award, or (b) not yet have requested or attempted to request evaluation under the 2011 regulations but also not yet have been paid for the award, as of the date this suit was filed?**

**4. Alternatively, what criteria would a potential class member have to satisfy in order to satisfy the requirement that a claimant have "notified the Special Master that he or she has elected to have the claim resolved under the regulations that were in effect at the time that the claim was submitted." 28 C.F.R. § 104.6 (2011)?**

A potential class member need not have requested or attempted to request that he or she be evaluated under the 2011 regulations before being paid an award.

For claimants who elected to await the Government's performance under the contract, the filing of an appeal constituted notice that the claimants desired application of the prior regulations. *See* pp. 5-6, *supra*. These claimants filed appeals seeking compensation beyond the amount first calculated by the Special Master "in accordance with the requirements of the Reauthorized Zadroga Act." Given the limitations imposed by the 2016 Amended Regulations

10

(pursuant to the statutory reauthorization), these appeals necessarily sought application of the regulations that were in effect at the time of their claim filing. Moreover, the Government had complete control over all VCF documents and procedures, knew that these appellants would benefit from application of the prior regulations, and created no forms or processes to facilitate this contractual obligation. Accordingly, the class should include all claimants who, like Mr. White, filed claims under the 2011 Regulations, received an award calculation that applied the 2016 Amended Regulations, and then pursued an appeal of this reduced award amount.

The class also includes claimants who, upon the Government's repudiation of the contractual terms, accepted the Special Master's reduced award, thereby closing their VCF claim and foregoing their contractual right to "have the claim resolved under the regulations that were in effect at the time that the claim was submitted." These claimants placed the Government in breach through their material change in position, suffered damages on account of this breach, and therefore are properly included in the class. *See* pp. 7-8, *supra*.

Regarding sub-question 3(b), it is Plaintiff's understanding, based on public statements from the Special Master, that all claims filed prior to the promulgation of the 2016 Amended Regulations had received their deficient awards prior to the date that this suit was filed.

                                                Respectfully submitted,

Dated:   July 31, 2025              /s/ Jeremy S. Spiegel
                                                Jeremy S. Spiegel, Esq.
                                                **LAW OFFICE OF JEREMY SPIEGEL**
                                                123 South Broad Street, Suite 1850
                                                Philadelphia, PA 19109
                                                Tel. (215) 609-3154
                                                Spiegel@JeremySpiegelLaw.com